May it please the court. My name is Daniel Drake. I'm an attorney from Phoenix, Arizona. I like the weather here, and I represent Julio Haro-Verdugo. The issue before the court is whether the district court was correct in denying a 2255 motion without benefit of hearing on grounds that the defendant was not denied the effective assistance of counsel when his attorney was not present at the settlement conference. The defendant asserted that he had no attorney at the settlement conference and filed an affidavit to that effect. The attorney who, according to the minute entry that the court relied upon, was supposed to be present, also filed an affidavit under oath indicating that he was not present at the hearing. The court hasn't said anything yet in this case, but I have hearing aids, and I may have a little bit of difficulty picking you up, so forgive me if we get to that point. Well, who attended the settlement conference? On his behalf? Well, on anybody's behalf. There were eight defendants, seven others, including Mr. Haro-Verdugo, and it looks like there were eight attorneys there as well. Okay. Was one of them representing him? No. The minute entry reflects that an attorney by the name of Sean Brunner was present on behalf of an attorney named Matt McGuire. Mr. McGuire is never content that he was at the hearing. Mr. Brunner filed the affidavit that said he only attended one proceeding in that case. It was not a proceeding regarding a settlement conference, but whether he could become counsel of record, and he has no recollection whatsoever of attending a settlement conference. Did the record show that he was there? The minute entry did, and the district court relied upon the minute entry because he thought it unlikely that the minute entry would be in error. Unfortunately, the minute entry was in error. It reflected that the proceeding had been recorded, and it was not until 2014 a minute entry was entered amending the 2006 minute entry to point out that there was no recording that was made of the proceeding. So we end up in a situation where whatever occurred in that room is something that there is no record of, no written record, no court reporter record. But is it a clearly erroneous standard that we have to decide on whether or not the district court erred in accepting, after looking at what he looked at, the declaration, I guess, from the attorney and the docket and everything, and making his determination? Is that the standard? We have to find that he clearly erred? With respect to the motion on the — with respect to whether there should have been an evidentiary hearing, that is an abuse of discretion standard. I thought on facts that the district court determined, that's not a clearly erroneous standard? Clearly erroneous in this particular case would not apply, in my view, for these reasons. When you have, at this stage of the proceeding, conflicting affidavits, then that is almost like a motion for summary judgment situation, where you assume for the sake of the proceeding that the allegations, if credible and if supported by facts made by the movement, are true. Then he's entitled to a hearing. Only if the records in the court conclusively show that he is not entitled to a hearing, that he is entitled to no relief, do you bypass the hearing issue. And because Mr. Harover-Dugo said — And you're representing Julio, right? Yes. Okay. Go ahead. Okay. Because he had an affidavit. He had an affidavit from his attorney that said he didn't. The fact that there might be a countervailing minute entry or the fact that the judge might think it unlikely that the magistrate judge might have done certain things, those are put to the side, and you look at the allegations made by the movement, and if they are adequate on their face, then that's what happens. You get a hearing. And there was no hearing in this case. Now, with respect to the — Well, he had occasion later to change his plea, did he not? His lawyer turned it down? Yes. What happened was that this case was indicted, I believe, in about 2005, and the proceedings that we're talking about now occurred sometime in late 2006. That is to say, the settlement conference occurred in December of 2006. Shortly after the settlement conference, the attorneys for Julio Verdugo, Jaro Verdugo, withdrew and were permitted to do so, and successor counsel was appointed under CJA, and the attorney for Sergio, who's going to be arguing next, also withdrew, and a CJA attorney was appointed for him. In the affidavit that was filed by the successor counsel for Julio, and that's available at the excerpt of record at pages 31, thereabouts, that Julio had a difficult time accepting what she was telling him, that he had difficulty accepting the law and the application of that law to the facts, and she questioned his acceptance of the information he provided. Now, those are all germane to whether he had a chance to change his plea or whether he didn't. What I would suggest to you is that if you look at the transcripts of the January 31 status conference between Judge Velasco and three or four attorneys at that point, you will find a passage in which Judge Velasco volunteers on the record that he has reached out to the assistant U.S. attorney who was in charge of the Tucson office, a fellow named Dan Knauss, and asked Mr. Knauss, apparently in a voice message, if he could get a different plea offer for the defendants. He then went through and regaled for Sergio the problems that he was going to be facing because he was 21, and he thought this fellow ought to know that he would never see his kids again, never take them to a movie. He'd never be engaged in a card game. And when he was — had served his 20 years, which was what the preliminary offer was, he'd still have 31 years to go. Mr. Drake, I'm sorry to interrupt you, but I want to ask, let's just assume his counsel was not present for that conference. I mean, you have to show prejudice, correct? And is that correct? There was no counsel present at the December 6th settlement conference. Assume that. Okay. Assume that. Don't you have to show prejudice? I think I have. Okay. All right. Because he had a year — he had other counsel, and he had a year between that settlement conference and the date of his first trial, because there was a mistrial in this case. Is that correct? Correct. And then there was another trial. And he's saying that based on that settlement conference, which occurred in January of — I can't remember that year, but that whatever happened, and despite his subsequent counsel, that affected his ability to enter a plea agreement. Right. That's your argument, is it not? That's my argument, and I have to overcome that hurdle. I don't doubt that for a minute. That's what the district court relied upon. And I think the district court was wrong in that regard, because if you look at the transcript of what took place on February — I'm sorry, January 31, it is really quite compelling about the magistrate judge's actions and comments to these people. It's much — And the district court, though, found that the counsel was there. Yes. Based on the docket entry. Based on? The docket entry. The minute entry, yes. Minute entry, yes. Okay. So you're saying that was wrong, and so, therefore, he should get relief. Let's just assume he wasn't there. Again, a lot of time transpired, and he had other counsel in between that time period. I just — I don't — I'm trying to figure out where the prejudice is. Right. See, I'm running out of time here, so I need to wrap up. I want to save a little bit of time, and Ms. Williamson has some issues as well. But the point is, the Allen — if I can analogize. The Allen charge is something that is given to a jury to break a deadlock and to get the jury to make a decision. These charges are not favored, at least in state court they're not, and they're not often given in federal court if they can avoid it. And what happened here is that the actions of the magistrate judge, as recounted by my client under oath, was that it terrified him and made him do exactly what might have seemed counterintuitive. It's almost like when a car salesman is trying to sell you a car, and he's working so hard to sell it to you that you're just not sure anything's right. Yeah, but, I mean, if he had gone into the next week and had to make that decision, I understand that, but he had over a year. So I just don't understand whatever happened and how traumatized he might have been by Judge Velasco in the settlement conference. I just don't — at least I'm not. And I wanted to — that's my main question for you, because I think that's the argument you led off with here, and so it seems like that's your main argument, too, to give you an opportunity to address my question regarding that. I think you have. So if you want to reserve any time and then allow for your co-counsel, we'll — Thank you. Thank you, Mr. Drake. Good morning, Your Honors. Kathleen Williamson here for Sergio Haro. And I'd like to try to reserve a minute, but I think some of my 10 minutes has been chewed up. In this particular case, the reason I'm here today is because my client got a life sentence. To me, that's the most compelling issue. But there's a lot of error that's built into this that accumulatively shows that this should go back. And there's — the things that I listed, for example, first of all, there's the problem with the certified issue and whether or not he should have had an opportunity to have those agents' reports, which we briefed. And then there's the amended issues and uncertified issues. The uncertified issue for me is regarding the Rule 11 problem with Judge Velasco. And I don't have the perfect trifecta that Mr. Drake has. My client did have an attorney present. But you still have 90 minutes in the dark and some very serious allegations in the affidavits about what happened in that 90 minutes and how traumatic that was collectively for these defendants. But then the amended issues that I have, which are — Don't you want to lead with the double jeopardy claim? Well, the double jeopardy claim has been conceded. And that's going back. It seems like you'd want to acknowledge that here. Oh, I'll definitely acknowledge that. We're going to take it back. And I'd like to, you know, ask the Court to not go along with the language the government has in their brief about limiting that simply to dismissing the conspiracy convictions and not letting the judge reconsider the sentence as is required in Hector and the progeny in the Mayer case where the judge has to reconsider the sentence and has discretion which counts to dismiss under 3553. So I would like to not limit that remand. And there was another case, a person involved in the same conspiracy. Was it not that that practice was done? Was it in this case? Yes. Leonardo Burgos, his attorney, filed the — they didn't object to it at trial, which was ineffective for both Mr. Rawls and Mr. Ellenwood. But then on — at the Ninth Circuit, Mr. Rawls did file it, and surprisingly, Mr. Ellenwood didn't file it. So my client didn't benefit from the double jeopardy — the very obvious double jeopardy problem in the indictment and the jury convictions. I don't know why Mr. Ellenwood didn't file that, but the government, in seeing that the exact same issues apply in the same indictment and so forth, has conceded that and that it should go back to a remand. I just don't think it should be limited in the way the government has phrased it in their — in their — I understand. I wanted to give you that opportunity because I'm going to ask Ms. McCollum about that. Thank you, Your Honor. And I would also like to address that the government has asked this Court to dismiss the amended issues, and I would ask the Court to build those amended issues in as a first part of the first petition, to expand that first petition. In effect, Judge — Michael Branahan was not really an attorney in the opening brief in this case because he was conflicted. And when he discovered his conflict after the opening brief was filed, that doesn't mean he wasn't conflicted the entire time. So in effect, I'm — I'm the first attorney on this case, and I'm from Tucson, and I know the situation, for example, with the previous counsel for Mr. Julio Verdugo and with the prosecutor at the time because it was — it was just known in the area. And I have a footnote in my brief, my supplemental opening brief, asking this Court to consider me as an officer of the court, and there's nothing in the record because nobody ever put anything in the record. But my argument is that not only should Mr. Julio Verdugo have known that his attorney had that prior — had a conflict with that relationship, but the co-defendants should have had information about that. You know, the Dennis case that's cited in our reply brief has a beautiful quote in it that says that every one of these conspiracy cases carries with it, quote, an inevitable risk of wrongful attribution of responsibility to one of the multiple defendants. And in this case, somehow, this life sentence shifted from the youngest son of Julio Verdugo, and I think the record has so many examples, and I built in excerpts of the trial transcripts as just a small fraction of all the facts in this case that are clear, that Julio Verdugo was really the mastermind of all of this. At the very back end of this case, after the government caused a lot of delay because of the mistrial, the judge blamed Ralph Ellenwood for not filing a mitigation — he files a motion to continue a week before sentencing. But the pre-sentence reports for both Julio and Sergio switch — like, the first draft for Sergio was a 360 recommended sentence, which probably would have been appropriate in this case. Not life. That's the top end of this. He was a criminal history category one when he was arrested at 21 years old, and he's been in prison ever since he was 21 years old on serving a life sentence in a case in which nobody was hurt, no gun was ever seen in this case. And Julio, his attorney, filed these motions, and then David Kern went along with those motions at the very back end of all of these proceedings, and all of a sudden, the attribution flips to where a week before sentencing, Mr. Ellenwood gets a new draft pre-sentence report recommending life. And, you know, the compounded fact that he waited so long to file the motion. Now, the government, you know, asking to continue and asking for some mitigating evidence to be presented to the court. There's also a lot of evidence in the trial record that Julio was really abusive in controlling of Sergio, and Julio's other children were all sacrificed to the drug trade. The entire family was in it. And Julio was on pretrial supervised release when this case was being investigated, which leads me to wonder why Sergio's phone was the only one that was wiretapped, because possibly because his father at that time was pending a Federal indictment. He had a Federal indictment already for these charges. Julio's father owns the trucking company. He owns all the property. Now, Ralph Ellenwood made these arguments in closing arguments before the Court, but the problem is, and the government has responded to my motions about this, that this was brought up at the Ninth Circuit. The ineffective assistance of counsel was not brought up at the Ninth Circuit. The same trial attorney did the appellate case. He was ineffective in not bringing the obvious double jeopardy motion, but he also wasn't going to say to the Ninth Circuit, I was ineffective. Chief Judge Bury actually said in the record that the reason he wasn't given the continuance for mitigation purposes to get a psychological evaluation was because Ralph Ellenwood brought it so late. And the Ninth Circuit says the exact same thing. Both of those courts blamed Ralph Ellenwood for that. So, you know, there's a — this is a life sentence. If he hadn't gotten a life sentence, this wouldn't be so crucial. But it's very disproportionate compared to all of the other people that were actually controlling Sergio Haro. He's a baby. And I think in reading a close read of this case, you can see when his father got arrested with that truckload of marijuana in 2003, he turns over the family business to the last of his children, the last son. The first son is already in Mexico on a warrant for drug — for a drug case. Everybody in the family has been trained by Julio Verdugo. With all due respect to Dan Drake and his client, that's what this case shows you when you read it. And Sergio got slammed at the end. And I have to wonder, how did a life sentence happen in this case? And I have to wonder, did Mr. Kern have some limerence still involved with his feelings for Mr. Julio's attorney? Did that — there should be some evidentiary hearing. There should be some question about that. What happened in that 90 minutes, that dark 90 minutes that traumatized Sergio, the January 31st transcript with Lorena Haro and Judge Velasco, he's telling Lorena, you can hear that the parents are still controlling Sergio and whether or not he even takes a plea agreement. All right. So I'm going to ask you the same question I asked Mr. Drake because it seems like you both are coming. I have to hurry here, yeah.  Sure. Thank you. When you're arguing and you're ending with it, the same argument that Mr. Drake led with, and that's that your client was somehow — this is such an odd and peculiar posture because normally we hear defendants come up here and say that, oh, they were forced into the plea agreement because of what happened maybe at a settlement conference when those settlement conferences were within the law, which this one was. A ruling came out later from this court saying that you shouldn't do those anymore without a clear waiver by the defendant. Here, as you acknowledge, your client did clearly have an attorney during that settlement conference, and he's been represented up until the time of his first trial and subsequent, and that happened. There's a good deal of amount of time that occurred between that settlement conference and the trial, and I guess I'm just trying to figure out what was the prejudice? Well, the only thing I can think and what my client has expressed and the other client, the other defendants have expressed is that they were so traumatized by that hearing, and they just pushed them into what one rationally wouldn't expect to happen. But it is like when you push something so hard, it makes people wonder, is the government's case so weak that the judge is on their side and trying to push us to take these plea offers? And the dark 90 minutes is very problematic. If we had a transcript of that 90 minutes, that's a long time for a settlement conference like this. But we do have a sort of a continuation of it in January 31st in the hearing with Lorena Harrow, where Judge Velasco has an awful lot of information about this case that I have to wonder, where did he get that? How did he know about this jailhouse attorney who's not really helping the defendants, as he says, in the January 31st hearing? How does he accuse Lorena Harrow of controlling Sergio and whether or not he takes a plea offer? Who asked for the settlement conference? According to the minute entries, it was requested by the attorneys. And so I understand that that could be an invited error. But whether or not it was on the record is a real problem, and what exactly happened there. Okay. I don't rest my entire concern about the life sentence on the Rule 11 violation. There should be — I think there's a violation there under the case law, just from the things that Judge Velasco said. Whether or not there's prejudice is the next problem, obviously.  Let me just see it. But my argument is that the — Thank you. Finch, any other questions? I was going to say not much happened at the magistrate's settlement conference. I mean, nothing that officially happened. They just said the magistrate was intemperate and suggested they enter pleas and all that stuff, right? Well, the descriptions — Take action. The descriptions are much more vivid and scary about what happened in the — in that 90 minutes. But I mean, the magistrate judge didn't put them on a higher bond or anything like that, or — No, no, no, Your Honor. Or dismiss them from the case or anything like that. No, Your Honor. No. But I do think that the — Thank you. Is there any other questions? Do you have any other questions? Thank you. I just wanted to say I think the issues are very important in terms of the amended issues that I raised. Yeah, if they're not waived, yes, I agree. Thank you very much. Thank you. Good morning, Your Honors. I'm Erica McCallum. I'm here from the District of Arizona, and I'm representing the government on this matter. We've had a whole lot of factual issues brought up during this hearing, but I think the most important thing here is that — you've asked twice — what is the difference from having this settlement conference that was off the record, and whether or not Julio had counsel at that settlement conference. And I think what's clear from the record is that the plea offers remained open for nearly another year, until that first trial in November of 2007. And there were sworn interrogatories provided by all of the defense counsel for these defendants, saying, I repeated — I discussed the plea offers repeatedly with my client and urged them to take the plea offers. So the offers were on the table, and they weren't withdrawn until that very first trial. And there — but there wasn't an evidentiary hearing. Shouldn't there have been an evidentiary hearing? There was no reason for an evidentiary hearing, because the issues that were They were patently frivolous. They had no support. And I think the district court really took into consideration that these issues were not raised until five years after the case ended. So, for example, just looking at the settlement conference, there were eight defendants at that settlement conference. There were eight lawyers there, according to the minute entry. Not a single one of them, during the entire course of the case, through the trial, through the direct appeal process, nobody said — Julio didn't have a lawyer, and nobody said that the magistrate judge did anything inappropriate. Just as an aside, the reason that that settlement conference was not recorded and there is no record of it is because the attorneys, the defense attorneys who were there, requested that it be held off the record. And you acknowledge that now, under Myers, that would have been a violation? I'm sorry, I didn't — You acknowledge under Myers, under the decision in Myers, that that would have been — To not have it recorded, or to have — No, to have a magistrate conduct a — To have the settlement conference? Yes. I think that the defendants can waive that, and it was actually Sergio who requested the settlement conference. So, I think by attending and by having the lawyers participate, there was a waiver. So, I don't think it was inappropriate. Also, none of the defendants in that first settlement conference on December 1st of 2006 accepted or rejected a plea agreement. Nothing happened there. Yeah, I understand that this may not have been one big happy family, but for the people who were there in the settlement conference, did their interests really diverge? Periodically? Four of the people that were there were the Haro family. The father, Julio, the son, Sergio, the mother, Lorenia, and the sister, Carolina. They had indicated that they wanted a global settlement offer. The other defendants who were there included Burgos Valencia, who was basically the supplier out of Mexico. And he went to trial. So, his interests, I think, didn't diverge from the Haro family. The other three defendants that were there were participants in the conspiracy, and they all, just on the eve of the first trial in late 2007, they all took plea agreements. So, I don't think that there were any adverse positions there. The second hearing in late January of 2007, so really about two months later, it's clear from the record that the magistrate judge is considering this a continuation of the settlement conference. He starts out by asking, so what is your position with regard to the plea offers? Now, at the second hearing, it's only the Haro family that's there. So, this demonstrates that the plea offers are still open, that the defendants are still considering them. In fact, at that hearing, Lorenia, the mother, and Carolina, the daughter, said, we're going to take the offers. And they set a change of plea date. Ultimately- The women? The women, yes. Ultimately, Lorenia withdrew her request for a change of plea, and she did go forward to trial. But Carolina did take the plea agreement. So, it's all there, it's on the table, it's available, and they rejected it. Now, to be clear, the certified issue is focused only on Julio. And Julio gave very different reasons for rejecting the plea, ultimately. They were, according to his trial counsel, number one, too much time. Number two, I don't like the forfeiture terms. Number three, gosh, now I've got to look at my notes. I don't like the forfeiture term. And he also thought, even though he lost his pre-trial litigation, he still thought he would win at trial. Now, what he didn't say was, I didn't have a lawyer at the settlement conference. What he didn't say was, there was this crazy behavior that terrified me at the settlement conference, and so I changed my mind about the plea deal. What he didn't say was, I'm not taking the plea deal because I want a global settlement for my family. But what he did say was, I changed lawyers during this proceeding because my prior lawyers pressured me to take the plea deal. So, we'll be glad it's an individual who's not terrified, who's thinking through his reasons, and they're not the reasons that he provided in the 2255 for rejecting the plea deal. On Sergio's ineffective assistance of counsel claim, it looks like all we have from his attorneys are responses to government interrogatories. And haven't we, in the past, at least required sworn statements? And aren't we, I mean, we're not supposed to determine credibility issues. I don't think on anything other than affidavits or sworn affidavits. So, what do we do with that? Shouldn't there have been something further required other than the, I think it was an interrogatory entry. To be clear, I believe that one of the defense counsel, Leslie Bowman, who was Julio's trial counsel, she did submit a sworn affidavit. Right. The others responded to the interrogatories. But I would think that under, at least under the civil rules, that responses to interrogatories signed by lawyers are, do have the value of a sworn statement. Certainly, it's not an issue that was raised in the 2255s. And it was not a certified issue on appeal. So, I would suggest that it may not be proper for the court's consideration. There's no indication that anything they said was incorrect or not corroborated. What about the amended, is it the amended issues? I would, I've moved to dismiss those. And I did that in my answering brief on page two, footnote one. And the reason for that is because those issues were not raised in the district court for the court's consideration. And in addition, at least one of the issues regarding the prior relationship between the trial counsel for, sorry, for Julio and the prosecutor is purely speculative. And there's absolutely nothing in any record regarding that instance. The other issue regarding the, whether or not Sergio's lawyer should have gotten a psych evaluation prior to sentencing. That was decided during the first appeal, the direct appeal. And that was addressed in the court's memorandum disposition. I would ask you not to consider those. Regarding the other non-certified issues that have been discussed today, I would ask that if the court were to entertain those issues, that it would afford the government an opportunity to respond to those. But I also don't think that that's necessary, that the defendants haven't met their burden of proof on any of the issues. I'm checking my notes to see if there are any other issues that came up. Any questions today? I don't believe so. If the court has no further questions, I would submit on my brief and ask you to affirm. Oh, actually, no. Regarding the double jeopardy issue as to Sergio, I did in my brief request that the court, that the remedy be to remand to the district court for the limited purpose of dismissing the conspiracy counts. And looking at the case log and preparation for this argument, I realized that because the district court has discretion to decide which count to dismiss, I would ask you to follow the language, maybe suggested language, that was used for the co-defendant, Provost Valencia, who was remanded for the same issue. And in that memorandum disposition, the court said, the Ninth Circuit said, remand to hold a hearing, and then for the district court to make a discretionary determination as to which conviction should be vacated. And that's in case number 08-10110 at pages 13 to 14. Thank you. Thank you. Thank you. Your Honor, you asked about the prejudice, and I want to come back to that. I'll give you, I'm just going to give you one minute on this, because we both have gone through a lot of time, so go ahead. Very good. First, he pled in a different case. He pled guilty six months prior to the September 6th settlement conference. You say this case is unusual in the way it posits up. Usually it's the defendants claiming they've been coerced into a plea. Chacom Palamaras fits this. The defendant says he was induced by his lawyer to reject the plea and go to trial. It also is a case that's instructive on the issue of affidavits and whether a hearing is required. And what it basically holds is that in that particular situation where you had conflicting affidavits, a hearing is most appropriate. I will say one thing with respect to the remand. Leslie Bowman, the attorney who represented Poor Harover Dugo, is now a magistrate judge in Tucson. Some of the issues, if this thing goes back for a hearing, pertain to Bernie Velasco, who was a magistrate judge in Tucson. And the court may wish to consider whether that's appropriate under the circumstances. Thank you. Thank you. Ms. Williamson, did you want to have one minute? Thank you, Your Honors. And I think that what Mr. Drake might be suggesting is that, added to the different judge question, is it possible that we might need a different venue because of the thickness of all the relationships down there in Tucson in this case? And Judge Burry, also in terms of the different judge, may not be able to objectively distance himself looking at all of the denials that we've had in this particular case and his tone at the sentencing of Sergio Haro. But the amended issues, just going back to that, the conflict isn't really speculative. As an officer of the court, I can tell you that that relationship was there, and an evidentiary hearing may be required. There was — there seems to have been a joint defense in this case, which would have warranted other defendants knowing about this relationship. Judge — the counsel vouched for David Kern in the first trial, which helped the defense bar lose a dismissal with prejudice in that case. There's a record showing real instances of — of conflict there. And then the psychological evaluation that was raised only at the Ninth Circuit level in terms of the appropriateness of the denial but not the ineffective assistance of counsel. And the record is clear, both by Judge Burry and the Ninth Circuit, that they blamed Mr. Allenwood, and he fell below the Strickland standards in waiting so long to bring that motion and asking the court to appoint mitigating evidence for Sergio Haro, considering the childhood he had being raised by these drug dealers. He was so young, and he got a life sentence. There's something wrong with that, and I think it relates to these amended issues. Thank you so much. Thank you very much for your presentations. The case of United States of America v. Julio Mario Haro v. Verdugo is now submitted.
judges: Siler, Schroeder, Murguia